NESBITT, Judge
(dissenting):
I am disturbed by the ambiguous scope of review announced by Judge Schwartz for granting rehearings en banc as well as its application to the present controversy.[4]
It is clear that Florida Rule of Appellate Procedure 9.331, authorizing en banc proceedings, is procedural in nature rather than a grant of substantive authority. State Farm Mutual Automobile Co. v. Judges, 405 So.2d 980 (Fla.1981). Notwithstanding a possible constitutional infirmity in the en banc rule due to Article V, Section 4(a) of the Florida Constitution, which provides: “Three judges shall consider each case and the concurrence of two shall be necessary to a decision,”[5] its constitutionality is assumed.[6] Nonetheless, it is necessary to determine the purpose for the rule in order to understand its parameter.
There is nothing in Article V, Section 4 which expressly authorizes a district court of appeal to grant motions for rehearing en banc nor is there any express authority in Article V, Section 3, of the Florida Constitution authorizing the Supreme Court to delegate this function to the courts of appeal.
Under Article V, Section 4 of the Florida Constitution of 1956, the Supreme Court had discretionary jurisdiction to review a decision of a district court of appeal that conflicted with another district court of appeal. If the two decisions from the same district court of appeal conflicted, the decision that was later in time overruled the former. Little v. State, 206 So.2d 9, 10 (Fla.1968). In 1972, the Constitution was changed authorizing the Supreme Court discretionary jurisdiction to resolve conflicts between decisions of any district courts of appeal. Art. V, § 3(b)(3), Fla. Const.1972. The 1980 amendment restored the constitutional provision to its stature before 1972, when the Constitution first authorized the review of intradistrict conflicts.[7]
The purpose of Rule 9.331, authorizing en banc proceedings, is, therefore, to permit a district court to harmonize its own intradistrict conflict because the Supreme Court can no longer do so.[8] The en banc rule owes its existence then to the substitution of the district court’s jurisdiction for that formerly exercised by the Supreme Court — consequently, the power to be exercised by a district court of appeal must be the same as formerly exercised by the Supreme Court. If the scope of review for granting en banc rehearings is broader than the standard utilized by the Supreme Court in the exercise of its discretionary jurisdiction, then it will extend to the district court of appeal an unconstitutional power never contemplated under any version of the judicial articles of the Florida Constitution from 1956 to date.
This interpretation of the rule gains additional support from the Committee Note to Rule 9.331 which states: “The ground, maintenance of uniformity in the court’s decisions, is the equivalent of decisional conflict as developed by Supreme Court *915 precedent in the exercise of its conflict cer-tiorari jurisdiction.”[9]’ [10]
Of the many statements attempting to define “decisional conflict” in order to activate the discretionary jurisdiction of the Supreme Court, perhaps the most articulate comes from Nielson v. City of Sarasota, 117 So.2d 731 (Fla.1960), where it is stated:
While conceivably there may be other circumstances, the principal situations justifying the invocation of our jurisdiction to review decisions of Courts of Appeal because of alleged conflicts are, (1) the announcement of a rule of law which conflicts with a rule previously announced by this Court, or (2) the application of a rule of law to produce a different result in a case which involves substantially the same controlling facts as a prior case disposed of by this Court. Under the first situation the facts are immaterial. It is the announcement of a conflicting rule of law that conveys jurisdiction to us to review the decision of the Court of Appeal. Under the second situation the controlling facts become vital and our jurisdiction may be asserted only where the Court of Appeal has applied a recognized rule of law to reach a conflicting conclusion in a case involving substantially the same controlling facts as were involved in allegedly conflicting pri- or decisions of this Court. Florida Power & Light Co. v. Bell, 113 So.2d 697 [Fla. 1959],
117 So.2d at 734. In Kyle v. Kyle, 139 So.2d 885 (Fla.1962), decisional conflict was also articulated to exist when one decision is so disharmonious with the prior decision by the court on the same point that it may be said to have overruled the former.
When that test is applied to the present case, it is apparent that the requisite conflict does not exist between this decision and Florida National Bank and Trust Company at Miami v. Havris, 366 So.2d 491 (Fla. 3d DCA 1979) relied upon in the majority decision. The majority would apply the rule of law enunciated in Havris, supra, to the facts of the present case. However, under the second test in Nielson, supra, the rule of law must be applied to “substantially the same controlling facts.” Clearly, the two cases differ in their controlling facts.
In Havris, there was a direct attack made upon the deed of conveyance, by the guardian of the property of the original grantor against the original grantee who was a niece of the incompetent grantor’s housekeeper. It was clear that there was no relationship by either consanguinity or affinity sufficient to support adequate consideration between the original parties. For this reason, the court quite correctly found from the record that the deed between the immediate parties — the grantor and grantee, based solely on love and affection, was not supported by consideration.
In the present case, the grantor, Mrs. Ross, delivered a deed for love and affection to a nonrelative who was a “con man.” When the deed in the present case was recorded, a third party, the Perezes, relying *916 upon the Marketable Title Act, Section 695.-01, Florida Statutes (1979), gave valuable consideration to the con man in exchange for the deed. The purchaser then procured a purchase money mortgage from Chase Federal Savings and Loan Association. Mrs. Ross, the original grantor, brought an action against the original grantee (con man) as well as the third party purchaser and mortgage lender. The trial court granted a money judgment in favor of the grantor against the grantee; however, it refused to cancel the third party purchaser’s deed. If this were a suit solely between Mrs. Ross and the con man, it would be unassailable that Havris would control. However, the present case does not concern the question of whether a deed given to a nonrelative is without consideration, but rather considers whether such a recitation places a third party purchaser on constructive, implied, or actual notice. Because Havris is concerned with the rights and remedies of immediate parties, in contradistinction to the rights and remedies of third party purchasers, any consideration of Hav-ris, as directly conflicting with the present case, is erroneous.
Since the en banc rule is directed entirely to intradistrict conflict, to the extent that the minority opinion granting rehearing en banc relies upon apparent conflicts in the Supreme Court of Florida, or other districts, it is entirely misplaced. If the original majority decision indeed conflicts with any decision of the Supreme Court' or that of another district court of appeal, then it is the prerogative of the Florida Supreme Court to review under the exercise of its discretionary jurisdiction.[11]
For these reasons, I dissent both as to the overbroad standard of review in the granting of en banc hearings announced by Judge Schwartz as well as to its application to the present controversy. The ambiguous standard announced by Judge Schwartz’ opinion is vague to the point that it permits review upon an ad hoc basis, which generates concern for the lack of finality of a decision of the district court of appeal and prompts needless requests for rehearings en banc. No matter how well motivated the majority decision is, it is apparent that it has granted a second appeal to the appellant without a substantial basis therefor. Such action does not comport with the constitutional scheme for reviewing judgments of the circuit court by the district courts of appeal under Article V of the Florida Constitution.
We certify to the Supreme Court, pursuant to Article V, Section 3(b)(4) of the Florida Constitution and in accordance with Florida Rule of Appellate Procedure 9.331, this question of great public importance involving the proper scope of review to be applied in granting motions for rehearing en banc.
HUBBART, C.J., and BARKDULL and BASKIN, JJ., concur.

.As the reader will readily observe, Judge Schwartz’ opinion as to the merits of the present case represents the majority opinion and decision. However, this dissenting opinion, having been joined in by Chief Judge Hub-bart and Judges Barkdull and Baskin, and specially concurred in by Judge Ferguson, has become the majority opinion as to the scope of review for granting rehearings en banc.

. 53 Fla. Bar J. 274, 279, Report of the Supreme Court Commission on the Florida Appellate Court Structure (1979).

. In re Rule 9.331, Florida Rules of Appellate Procedure, 374 So.2d 992 (Fla.1979).

. 54 Fla. Bar J. 406, 412, An Analysis of the 1980 Jurisdictional Amendment (1980).

.In Re Rule 9.331, 416 So.2d 1127 (Fla.1982).

. The minority opinion suggests that the use of the language “necessary to maintain uniformity” indicates a different standard than the “direct conflict” required by the Supreme Court. There is no difference in meaning between the two phrases. Black’s Law Dictionary, 5th Edition, defines the word “uniform” as:
Conforming to one rule, mode, pattern or unvarying standard; not different at different times or places; applicable to all places or divisions of a country. Equable, applying alike to all within a class; sameness.
This “sameness” is the controlling factor in determining a “direct conflict” as will be discussed later in this dissent. Different labels to describe the requisite type of conflict may have been purposely employed by the drafters in an attempt to distinguish which court’s jurisdiction is sought to be invoked.

. The Committee Note to Rule 9.331 indicates that the district courts of appeal are free to develop their own concepts of decisional uniformity. This, in my view, has reference to divergent practices about the use and employment of the rule rather than the scope of review. Such practices include: (1) the form which a nonuniform decision may take (per curiam affirmance without an opinion, an order dismissing an appeal or denying an extraordinary writ without an opinion); (2) whether rehearing could be granted before receding from an earlier decision rendered by that court; or (3) whether there may be a conflict with an opinion which has not yet been released. It is in this sense, as the majority recognizes in footnote 1, that the district courts may develop their own definitions different from the Supreme Court.

. Even if this court could consider any apparent conflict with those decisions, a quick perusal of those cases indicates that their holding is consistent with the original majority opinion in this case. Despite some broad language in Sapp v. Warner, 105 Fla. 245, 141 So. 124 (1932), the actual holding is that the purchasers were bound to look to the record guardianship proceeding in order to ascertain whether there was authority to execute a deed of conveyance. It does not require the purchaser or examining attorney to resort to matters extrinsic to the record and is therefore consistent with Zaucha v. Town of Medley, 66 So.2d 238 (Fla.1953). Hagen v. Sabal Palms, Inc., 186 So.2d 302 (Fla. 2d DCA 1966), cert. denied, 192 So.2d 489 (Fla.1966), also cited by the majority, merely adopts the well-settled rule announced in Sapp v. Warner, supra, and Zaucha v. Town of Medley, supra.
Furthermore, in Hull v. Maryland Casualty Co., 79 So.2d 517 (Fla.1955), the court held that the true owner is estopped to assert his title against bona fide purchasers who rely upon the record and are without notice of the interest of the true owner. And, in McCoy v. Love, 382 So.2d 647 (Fla.1980), the supreme court held that an elderly grantor is charged with the responsibility of informing herself as to the legal effect of the deed she is conveying. These two decisions as well as the maxim that, as between two innocent parties, the party whose negligence contributes to the error, will bear the risk of loss, Niccolls v. Jennings, 92 So.2d 829 (Fla.1957), support the original majority opinion that rescission should not be granted in favor of Mrs. Ross against the third party purchasers.